UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BANK OF AMERICA, N.A., Successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP,

Plaintiff,

v.

ARLINGTON WEST TWILIGHT HOMEOWNERS ASSOCIATION, *et al.*,

Defendants.

Case No. 2:16-cv-00810-KJD-NJK

ORDER

Presently before the Court is the Motion for Summary Judgment of Arlington West Twilight Homeowners Association ("Arlington West") (#60). Plaintiff Bank of America ("BANA") filed a response in opposition (#69) to which Arlington West replied (#74).

Also, before the Court is Plaintiff Bank of America's Motion for Summary Judgment (#61). Defendant/Counterclaimant SFR Investments Pool 1, LLC filed a response in opposition (#70) as did Defendant Arlington West (#71) to which Plaintiff replied (#73).

I. Background

Kimberly and Jason McLaughlin ("Borrowers") financed their property located at 9154 Smugglers Beach Court, Las Vegas, Nevada 89178 with a $254,998.00 loan secured with a deed of trust. In June 2011, the deed of trust was assigned to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP. On July 1, 2011, BAC Home Loans Servicing, LP merged with and into BANA.

The property is subject to and governed by the Declaration of Covenants, Conditions and Restrictions and Grant of Easements ("CC&Rs") for Arlington West Twilight Homeowners Association. Eventually, Borrowers defaulted on their obligation to pay assessments of

approximately $47.00 per month under the CC&Rs to Arlington West. On June 2, 2011, Arlington West through its foreclosure agent, Defendant Alessi & Koenig, LLC ("ALESSI"), recorded notice of delinquent assessment lien. ALESSI recorded notice of default and election to sell on July 23, 2012. The notice stated that Borrowers owed $1,331.39 plus costs and fees without specifying which part was the superpriority lien.

On August 20, 2013, BANA's counsel, Miles Bauer Bergstrom & Winters, LLP ("Miles Bauer") offered to pay the superpriority lien and asked for a total. In response, ALESSI provided an account statement which reflected that Borrowers owed $47.00 per month in assessments. The statement did not indicate that they owed any maintenance or nuisance abatement charges. Based on the ledger, BANA calculated the superpriority amount as $423.00 (nine months of assessments) and tendered that amount by check to ALESSI on October 3, 2013. ALESSI received, but rejected, BANA's tender.

Foreclosure sale was conducted on or about October 30, 2013. SFR purchased the property for $18,100.00. The parties now disagree as to whether Arlington West's foreclosure extinguished BANA's lien or whether SFR purchased the property subject to the lien.

II. Standard for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials by disposing of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment. First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d

1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

III. Analysis

Bank of America argues that its deed of trust survived Arlington West's nonjudicial foreclosure for four discrete reasons: (1) the bank tendered—or was excused from tendering—the superpriority portion of the HOA lien; (2) the association foreclosed under an unconstitutional version of NRS § 116 and violated due process as-applied; (3) the Supremacy Clause preempts NRS § 116; and (4) the sale was unfair and should be equitably set aside under Shadow Canyon. Because the Court finds Bank of America's tender argument dispositive, it need not reach the bank's other arguments. Arlington West and SFR, on the other hand, moves for summary judgment on their quiet title claims. They seek a declaration that Arlington West's foreclosure extinguished both BANA's and Borrowers' interest in the property. While the Borrowers are in default, and it appears that their interest has been extinguished, the Court must deny their claims against BANA.

BANA argues that its tender of the superpriority portion of Arlington West's lien before the association's foreclosure preserved its deed of trust from extinguishment. The bank's argument hinges on the check that Miles Bauer sent ALESSI after receiving the association's notice of foreclosure. In response to that notice, Miles Bauer contacted ALESSI and requested the superpriority balance and offered to pay whatever that balance was. ALESSI responded with an account statement that itemized all the outstanding fees on the Property's account. From that statement, Miles Bauer calculated nine months of association assessments and remitted ALESSI a check for that amount, $423.00. ALESSI rejected the check and foreclosed anyway.

The Nevada Supreme Court has addressed whether valid tender preserves a lender's deed of trust in a series of recent cases. In Bank of America, N.A. v. SFR Invs. Pool 1, LLC, the Court definitively held that a lender's valid tender prior to the association's foreclosure preserves the lender's first deed of trust. 427 P.3d 113, 118 (Nev. 2018) ("Diamond Spur"). Tender is valid if (1) it pays the entire superpriority lien (id. at 117) and (2) it is unconditional or insists only on conditions the tendering party has a right to insist upon (id. at 118). The tendering party is under

1  no obligation to "keep [the tender] good" or deposit the tender into an escrow or court-
2  established account. Id. at 120–21. At bottom, valid tender voids the association's foreclosure of
3  the superpriority portion of the association's lien, which results in the buyer taking the property
4  subject to the lender's first deed of trust. Id. at 121.

5  Then, in Bank of America, N.A. v. Thomas Jessup, LLC Series VII, the Nevada Supreme
6  Court reaffirmed the tender rule and carved out an exception where an association makes clear
7  that it will reject tender. 435 P.3d 1217 (Nev. 2019). Thus, a lender can preserve its deed of trust
8  against an association's foreclosure by calculating the superpriority balance and tendering
9  payment for that amount. Diamond Spur, 427 P.3d at 117. Or, even if money never changes
10 hands, the lender's deed of trust survives foreclosure if it attempted to tender payment, but the
11 association rejects that payment. Thomas Jessup, 435 P.3d at 1220. This Court has adopted the
12 Nevada Supreme Court's reasoning. See RH Kids, LLC v. MTC Fin., 367 F.Supp.3d 1179,
13 1185–86 (D. Nev. 2019); Deutsche Bank Nat'l Tr. Co. v. SFR Invs. Pool 1, LLC, No. 2:17-cv-
14 0457-KJD-GWF, 2018 WL 5019376 (D. Nev. Oct. 16, 2018).

15 The facts here are similar to Diamond Spur and Jessup, and the result is the same;
16 BANA's deed of trust survived the association's foreclosure. Defendants bring a litany of
17 arguments challenging Miles Bauer's tender. First, SFR argues that NRS 116.3116 and
18 116.310312 make BANA's tender invalid. Defendants also challenge the validity of the tender
19 itself and the admissibility of BANA's evidence of that tender. Defendant SFR, in essence,
20 claims that the business records have not been adequately authenticated.

21 None of SFR's arguments dissuade the Court from applying Diamond Spur and finding
22 for BANA. SFR's arguments that NRS § 116.116.3116 and 116.310312 prohibited the HOA
23 from accepting tender contradict the Nevada Supreme Court's holdings in Diamond Spur and
24 Jessup. The Nevada Supreme Court found for banks that had tendered with correspondence
25 nearly identical to the correspondence in this action. The language of the correspondence did not
26 constitute a contract or agreement within the meaning of §§ 116.1104 or 1108. An attempt by the
27 bank to clarify that its payment was intended to satisfy the superpriority lien and avoid
28 extinguishing its security interest did not vary NRS Chapter 116 by agreement. Under SFR's

logic, no tender or cure of the default could ever be possible except at the mercy of the HOA.

Further, SFR asserts that Miles Bauer's letter prevents the HOA from adding maintenance and abatement fees and costs associated with collecting them to the superpriority amount. However, SFR has failed to adduce any evidence that there were maintenance or abatement costs in this action. In fact, the ledger provided by ALESSI contradicts SFR's claims. Accordingly, SFR's motion for summary judgment on this issue is denied.

Defendants argue that equity favors them when considering BANA's tender. However, equity is not in consideration when deciding whether the sale is void, because the lien was satisfied by BANA's tender. See, e.g., Diamond Spur, 427 P.3d at 120-21 (Nevada Supreme Court did not balance equities). Further, even if the Court were required to balance the equities, which it is not required to do, none of the evidence outweighs Arlington West's and ALESSI's rejection of Bank of America's tender.

Finally, Plaintiff's citation to the affidavit of Kendis is more than adequate on a motion for summary judgment. SFR argues that BANA failed to authenticate the account ledger that it used to calculate nine-months of Arlington West's past-due assessments. The argument is two-fold: the account statement is inadmissible hearsay and the affidavit authenticating the statement is defective because Miles Bauer was not custodian of records for Arlington West. Neither argument renders these documents inadmissible. First, the business records exception does not require that the custodian of record for the business that created the document authenticate that document. See MRT Const. Inc. v. Hardrives, Inc., 158 F.3d 478, 483 (9th Cir. 1998). Like here, an official from another entity who relied upon the accuracy of the business record may properly authenticate it. Id.; see also Fed. R. Evid. 803(6). Accordingly, the account statement provided by ALESSI to Miles Bauer is not inadmissible hearsay.

BANA has met its burden with the affidavit. Kendis, the affiant, had adequate knowledge and information to authenticate these business records. Kendis stated he was familiar with the type of records maintained by Miles Bauer in connection with [this] loan. He attested that the ledger was "a Statement of Account from [ALESSI]" … "received by Miles Bauer" in response to correspondence sent to ALESSI on August 20, 2013. The Court, therefore, overrules SFR and

Arlington West's objection to BANA's evidence.

In sum, BANA's deed of trust survived Arlington West's trustee's sale because the bank's tender cured the superpriority lien balance before foreclosure. That tender voided Arlington West's foreclosure as to BANA's interest in the property. Therefore, SFR acquired the property subject to BANA's existing deed of trust. The Court, therefore, grants Plaintiff Bank of America's motion and declares that its deed of trust still encumbers the property.[1]

C. BANA's Remaining Wrongful Foreclosure and Breach of NRS § 116 Claims

After granting BANA's motion and finding that its deed of trust survived Arlington West's foreclosure, only BANA's claims for wrongful foreclosure and breach of NRS § 116 against ALESSI and Arlington West and the bank's injunction claim against SFR remain. As for BANA's wrongful foreclosure and breach of NRS § 116 claims, the bank pleaded those claims in the alternative to its quiet title and declaratory relief claims. Because the Court has granted judgment on the bank's quiet title claim, it need not consider alternative claims. Accordingly, BANA's wrongful foreclosure and breach of NRS § 116 claims against Arlington West and ALESSI are dismissed.

Likewise, the Court dismisses BANA's injunctive relief claim against SFR. Although styled as a stand-alone cause of action here, an injunction is a remedy. See Jensen v. Quality Loan Svc. Corp., 702 F.Supp.2d 1183, 1201 (E.D. Cal. 2010); In re Wal-Mart Wage and Hour Emp't Practices Litig., 490 F.Supp.2d 1091, 1130 (D. Nev. 2007). Additionally, an injunction at this point is unnecessary. The Court has already quieted title and provided the declaratory relief the bank sought. Therefore, the Court dismisses BANA's injunctive relief claim against SFR.

Finally, the Court dismisses Counterclaimant SFR's claims against Counterdefendant BANA.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant Arlington West Twilight Homeowners' Association's Motion for Summary Judgment (#60) is **DENIED**;

---

[1] Because the Court grants Plaintiff's motion for summary judgment on its claim that it validly tendered an amount to satisfy the superpriority lien and grants the motion, it is unnecessary to reach the other grounds cited in its motion for summary judgment.

IT IS FURTHER ORDERED that Plaintiff Bank of America, N.A.'s Motion for Partial Summary Judgment (#61) is **GRANTED.** The Court declares that BANA's deed of trust in the property located at 9154 Smugglers Beach Court, Las Vegas, Nevada 89178 survived Arlington West Twilight Homeowners Association's nonjudicial foreclosure. The Court also declares that whatever interest Defendant SFR acquired in the property it takes subject to Plaintiff's first deed of trust.

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Plaintiff/Counterdefendant Bank of America, N.A. and against Defendants and Counterclaimant.

Dated this 6th day of March, 2020.

Kent J. Dawson
United States District Judge